IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                    Case No. 09-10008-JTM

JUDAH PRINCE,
formerly known as Rex Lutes

Defendant.

MEMORANDUM AND ORDER

Presently before the court are defendant Judah Prince's motions to suppress statements (Dkt. No. 17), to incorporate and preserve motion to suppress from previous case (Dkt. No. 18), and to dismiss count 2 (Dkt. No. 19). The court held a hearing on June 25, 2009, where it made several detailed rulings, and took other matters under advisement. For the reasons detailed on the record and summarized below, the court grants as uncontested Prince's motion to suppress statements; grants Prince's motion to incorporate and preserve the motion to suppress from the previous case; and denies Prince's motion to dismiss count 2. As to the portion of the motion taken under advisement, the court finds that the selling of a "flat" is not the equivalent of a "receiver of frame" to qualify as a 'firearm' as defined in 18 U.S.C. § 921(a)(3)(B). As such, the selling of those flats would not qualify as illegal conduct. Sale of those flats is the only alleged illegality supporting the initial investigation. As a result, all evidence that is the fruit of the search must be suppressed.

*I. Facts*

In January 2008, ATF agents from Georgia were conducting an investigation into the illegal manufacture and sale of firearms by Mr. Raybon Wilson through an online site called "Gunbroker.com."  During the investigation, the ATF determined that some AK-47 flats had been shipped to Prince.  The flat purchased is a piece of metal with laser perforations and holes, which could allegedly be folded to become part of a firearm.  Based solely upon the purchase of the flat, the Georgia ATF office made a referral to the Wichita ATF office.

On January 9, 2008, ATF Special Agent Wes Williamson and Greg Heiert were assigned to look into Prince's purchase of the AK-47 flats.  Around 11:00am, Special Agents Williamson and Heiert, and Newton Police Detective Bryan Hall went to Prince's place of employment, King Construction, to ask him about the AK-48 flats.  After visiting briefly, Prince agreed to meet the officers at his residence in Newton, Kansas, over his lunch hour.  Prince arrived at his house and explained to the investigators that all the items they wanted to see were in his garage because he had been to a gun show selling firearms and related materials.

Prince opened the garage door and showed the investigators the items he believed they were interested in seeing.  The agents observed several firearms, and questioned Prince.  Prince answered many questions, but ultimately refused the officer's request to look through his home.  The government claims that Prince failed to answer some questions directly, while Prince claims that he was simply in a hurry to get back to his office in Hesston.

After the lunch-time encounter, the agents executed a search warrant at Prince's home that related to firearms.  During the search of the residence (#8 Rolling Hills, Newton) officers observed in plain view several plants of marijuana and an apparatus for growing it.  A second search warrant was then obtained from a Harvey County judge based on those observations, and

those items were then seized.  All of the items seized stem from the initial investigation based upon the sale of the flat.

## II.  Motions

### 1.  Motion to Suppress Statements (Dkt. No. 17)

The court grants Prince's motion to suppress statements as uncontested.  The government does not plan on using the statements in its case in chief, and would offer the statements only if Prince testifies in a conflicting manner.

### 2.  Motion to Dismiss Count 2 (Dkt. No. 19)

Count 2 charges Prince with possessing a firearm while being an unlawful user of a controlled substance, in violation of 18 U.S.C. 922(g)(3), which provides: "It shall be unlawful for any person who is an unlawful user of or addicted to any controlled substance . . . to possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Prince contends that 18 U.S.C. 922(g)(3) is unconstitutional on its face and as applied because: (1) it does not require a substantial effect on interstate commerce; and (2) it violates the Second Amendment's right of an individual to keep and bear arms.

### A.  Commerce Clause

Prince argues that the Commerce Clause does not give Congress the power to criminalize the possession of a firearm merely because it traveled in or affected interstate commerce. However, he concedes that the Tenth Circuit has recently rejected that argument.  *United States v. Urbano*, 563 F.3d 1150 (10th Cir. 2009).  Further, every circuit to consider this argument has rejected it.  As such, the motion is denied.

-3-

### B.  Second Amendment

Prince argues that the recent Supreme Court case of *District of Columbia v. Heller* renders count 2 an unconstitutional restraint on an individual's right to bear arms.   128 S. Ct. 2783 (2008).  In *Heller*, the Court held that the District of Columbia's ban on the possession of handguns in the home violates the Second Amendment, and that people are entitled to keep handguns at home for self-protection.  *Id.* at 2821-22.  Nevertheless, the Court noted that the right to bear arms is not unlimited, and that the Second Amendment protects only the interests of law-abiding citizens.  *Id.*; *see also United States v. Jackson*, 555 F.3d 635 (7th Cir. 2009) (holding that there is no constitutional right to possess guns when distributing illegal drugs).

In this case, Prince is charged with illegally possessing a firearm while being a user of a controlled substance.  Thus, while *Heller* upheld the Second Amendment, it did not and does not prohibit Congress from putting certain limitations on firearms, particularly when, as in this case, that firearm is involved in illegal activity.  As such, Prince's motion is denied.

### 3.  Oral Motions at the Hearing

Prior to the start of the hearing, Prince made several oral motions.  Prince's motion to exclude mention of his prior conviction is granted as uncontested.  Prince's motion to exclude mention of his alias, "Rex Lutes" is denied; however, the court will change the caption from "also known as" to "formerly known as."

### 4.  Motion to Incorporate and Preserve Motion to Suppress from Previous Case (Dkt. No. 18)

Prince moves to incorporate and preserve the motion to suppress from the previous case, and the government has no objection to that request.  As such, that portion of the motion is granted as uncontested.

Prince also supplements the previous motion by arguing that the only allegation of illegality that supported the issuance of the search warrant was indirectly tied to an investigation in Georgia regarding the internet sale of "flats."  Prince argues that the flats were not "firearms," and thus could not be the basis of illegal activity, that issuing the warrant was a mistake of law, rather than mistake of fact, and that the search and all the fruits must be suppressed.

The government responds that while ATF investigators went to Prince's home because of the reported sale of the flats, other evidence observed at the scene helped to provide the basis for probable cause for the issuance of the search warrant, including numerous bags in the defendant's garage that the agent believed contained auto part kits, UZI materials, and the defendant's admission that he sold items at a gun show without a license, in violation of 18 U.S.C. 922(a)(1)(A).  The government argues that the flats are "firearms," and that other information gathered at Prince's home support the finding of probable cause for the issuance of the warrant.  However, the court notes that the other information which might support the finding of probable cause was gathered while investigating purchase of the flats.

The court finds that the metal flat shipped to Prince is not a firearm.  The court carefully considered the expert testimony of Agent Adam Galbraith, and reviewed the material submitted by the government concerning ATF opinions.  However, the court simply does not believe that a flat piece of metal with laser perforations and holes constitutes a "receiver," i.e., a "firearm." Rather, the flat piece of metal is somewhat akin to a piece of paper with lines drawn on it as a guide to make a paper airplane.  Although making the paper airplane might be the intended use, it is not an airplane until it is properly folded.  Until that time, it is a patterned piece of paper. Simply put, this court has no evidentiary or legal basis for holding that a flat piece of metal with

laser perforations and some holes constitutes, ultimately, a "firearm." It may become part of a firearm at some point, but not until further work has been accomplished to allow it to secure the stock, chamber, barrel and other parts.  Until that time, it is not even a true component of a firearm, only a potential component of a firearm.  The statute, as written, does not extend that far.       Because this court finds that the flats are not "firearms," selling flats is not illegal conduct.  Thus, the investigation as it relates to defendant was a mistake of law and a violation of the Fourth Amendment; all the evidence seized from the inception of the investigation must be suppressed.  *See, e.g., United States v. Orduna-Martinez*, 561 F.3d 1134, 1137 (10th Cir. 2009) (noting that a mistake of law usually cannot pass Fourth Amendment muster); *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003)(suppressing evidence found that was fruit of the poisonous tree, due to an initial stop based on a mistake of law).  Further, the good faith exception to the exclusionary rule is inapplicable when a search is based on an officer's mistake of law.  *United States v. Chanthasouxat*, 342 F.3d 1271, 1279-80 (11th Cir. 2003).  As such, all the evidence in this case must be suppressed because it all flows from the initial investigation that originated based on the mistake of law.

Before issuing this ruling, the court advised the parties of its decision by phone conference on the record.  The trial scheduled to commence June 30, 2009, is continued in order to allow the government to consider its options.

IT IS ACCORDINGLY ORDERED this 26th day of June, 2009, that Judah Prince's motion to suppress statements (Dkt. No. 17) is granted as uncontested; to incorporate and preserve motion to suppress from previous case (Dkt. No. 18) is granted as uncontested; and to dismiss count 2 (Dkt. No. 19) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE